# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

FLORIDA RISING TOGETHER, INC.
*Plaintiff*,

v.

No: 6:24-cv-1682-WWB-EJK

CORD BYRD, in his official capacity as Florida
Secretary of State, et. al.,
*Defendants*,

REPUBLICAN NATIONAL COMMITTEE and
REPUBLICAN PARTY OF FLORIDA,
*Proposed Intervenor-Defendants*.

## MOTION TO INTERVENE

The Republican National Committee (RNC) and the Republican Party of Florida (RPOF) move to intervene as Defendants in this case. When Florida Rising Together previously challenged Florida's election rules in federal court, the RNC successfully intervened. *Fla. Rising Together v. Lee*, Doc. 52, No. 4:21-cv-201 (N.D. Fla. July 6, 2021). In recent challenges to Florida's election rules, federal district courts in this state, including this Court, have virtually always allowed political parties and committees to intervene to protect their interests in the laws and rules governing Florida's elections.[1] In fact, Movants are unaware of any ruling by any federal district court in Florida denying

---

[1] *E.g.*, *Brown v. Detzner*, Minute Order, No. 3:12-cv-852 (M.D. Fla. Sept. 17, 2012); *Vote.Org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. May 26, 2023); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc. 34, No. 4:21-cv-242 (N.D. Fla. July 6, 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21cv186 (N.D. Fla. June 4, 2021); *Fla. State Conference of Branches & Youth Units of the NAACP v. Lee*, Doc. 43, No. 4:21cv187 (N.D. Fla. June 8, 2021); *VoteVets Action Fund v. Detzner*, Doc. 16, No. 4:18-cv-524 (N.D. Fla. Nov. 11, 2018); *Jacobson v. Detzner*, Doc. 36, No. 4:18-cv-262 (N.D. Fla. July 1, 2018).

1

any national political committee intervention in a case challenging the state's election procedures. For good reason—in such cases, national political committees "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Nielsen v. DeSantis*, No. 4:20-cv-236, 2020 WL 6589656, at \*26-27 (N.D. Fla. May 28, 2020). That's why district courts throughout the Eleventh Circuit have allowed the Republican Party to intervene in cases that challenge election rules.[2] This Court should grant the motion for two independent reasons.

*First*, Movants satisfy the criteria for intervention by right under Rule 24(a)(2). This motion is timely. Plaintiff's complaint was filed just one month ago. This litigation is still in its earliest stages, and no party will possibly be prejudiced. Movants also have a substantial interest in protecting Republican members, candidates, voters, and resources from Plaintiff's attempt to upend Florida's duly promulgated voter-registration system, potentially within weeks of a national election. Finally, no other party adequately represents Movants' interests. Adequacy is not a demanding standard, and the State

---

[2] *E.g., Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, Doc. 84, No. 1:23-cv-4929 (N.D. Ga. May 3, 2024); *New Ga. Project v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021); *United States v. Georgia*, Minute Order, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021); *Coal. for Good Governance v. Raffensperger*, Minute Order, No. 1:21-cv-2070 (N.D. Ga. June 21, 2021); *Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, Minute Order, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021); *Sixth Dist. of the African Methodist Episcopal Church v. Kemp*, Minute Order, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021); *Vote Am. v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021); *Asian Ams. Advancing Justice-Atlanta v. Kemp*, Doc. 39, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Wood v. Raffensperger*, Doc. 14, No. 1:20-cv-5155 (N.D. Ga. Dec. 28, 2020); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020).

Defendants do not share Movants' unique interests in protecting their resources and helping Republican candidates and voters.

*Second*, in the alternative, the Court should grant Movants permissive intervention under Rule 24(b). As noted above, this motion is timely. Movants' defenses share common questions of law and fact with the existing parties, and intervention will not result in delay or prejudice. The Court's resolution of the important questions in this case will have significant impacts for Movants as they work to ensure that Republican candidates and voters can participate in the 2024 election.

Whether under Rule 24(a)(2) or (b), Movants should be allowed to intervene as Defendants. Federal district courts in the state of Florida often grant Movants permissive intervention under Rule 24(b), absolving the need to address intervention as of right under Rule 24(a). Movants maintain that they have a right to intervene under Rule 24(a), but also approve of that efficient resolution here.

## INTERESTS OF PROPOSED INTERVENOR

The RNC is a national committee as defined by 52 U.S.C. §30101. It manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, including in Florida, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC's membership consists of the party chair and national committeeman and national committeewoman for each State and territory, including multiple representatives from Florida who are registered voters in Florida.

The RPOF is a Florida state political party committee recognized under state and federal law. *See* 11 C.F.R. 100.15; Fla. Stat. §103.091. RPOF is the statewide

organization representing Republican candidates at the state and local level and the more than five million Republican voters throughout the State of Florida. RPOF supports the election of duly nominated Republican candidates through fundraising, voter registration, get-out-the-vote drives, and other campaign activities. RPOF is committed to a fair and open election process where every lawfully eligible person entitled to vote has the opportunity to cast a ballot and have that ballot counted properly. RPOF's membership includes a large state executive committee, all of whom are individuals and registered voters in Florida.

Movants regularly encourage eligible individuals to register to vote as Republicans in Florida. Consequently, Movants have an interest in ensuring that voter registration in Florida is conducted in a safe and secure manner and ensuring clear communication to Republican voters regarding the requirements associated with registration. Florida will have a Republican on the 2024 general election ballot for President, U.S. Senate, and all 28 of Florida's congressional seats are up for election in 2024. In addition, numerous Florida Senate and House of Representatives seats are up for election in November with a Republican candidate running in most of those races. Florida also will have numerous local races with Republicans on the ballot this year. Because this case seeks permanent relief, the outcome will impact elections occurring in Florida well beyond 2024. Movants have interests—their own and those of their members—in how Florida elections are structured and the way that voter registration is conducted.

**ARGUMENT**

**I.    Movants have an unconditional right to intervene.**

Movants are entitled to intervene as a matter of right under Rule 24(a). This Rule is to be "'construed liberally,'" *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2009 WL 2971103, at *1 (S.D. Ala. 2009), and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors," *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Such an approach enables efficient resolution of "all related disputes in a single action." *Id.* Under Rule 24(a)(2), this Court must grant intervention by right if four things are true: (1) the motion is timely; (2) Movants have a legally protected interest in this action; (3) this action may impair or impede that interest; and (4) no existing party adequately represents Movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). All four are true here.

**A.    The motion is timely.**

Timeliness is determined by four factors: (1) the length of time after Movants knew of their interest in the case; (2) any prejudice to the existing parties from undue delay; (3) prejudice to Movants from denying intervention; and (4) any unusual circumstances. *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259 (11th Cir. 2002). The "convenience" of the parties is irrelevant. *Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999). All four factors favor Movants.

Movants filed this motion quickly—just one month after Plaintiff filed its complaint and before any Defendant has answered. A motion to intervene can be timely even if submitted seven months after the original complaint. *Chiles*, 865 F.2d at 1213; *see also*

*Snadon v. SEW-Eurodrive, Inc.*, 2020 WL 13544217, at *1 (N.D. Ga. Nov. 4, 2020) (motion filed ten months after case removed to federal court was "not untimely"); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer not untimely). That the Court has not yet taken "significant action," *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259-60, and "[n]o trial date has been set," *Naples 9, LLC v. EverBank*, 2011 WL 1884628, at *2 (M.D. Fla. May 18, 2011) further confirms the motion is timely.

Nor will Movants' intervention prejudice the parties. The case is "still at the answer stage," *New Ga. Project*, 2021 WL 2450647, at *2, and no party has filed any briefs or dispositive motions. Neither has this Court issued any substantive rulings. Movants will comply with all deadlines that govern the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery. If Movants are not allowed to intervene, however, their interests may be irreparably harmed by an order overriding Florida's election rules. There are no unusual circumstances. Movants are filing at the earliest possible opportunity. This motion is timely.

**B.    Movants have protected interests in this case.**

As the national committee of the Republican Party and a state-wide party who represent members, candidates, and voters in every county in Florida, Movants have "'direct, substantial, legally protectible interest[s] in the proceeding.'" *Chiles*, 865 F.2d at 1213-14. Specifically, Movants want Republican voters to vote, Republican candidates to win, and Republican resources to be spent wisely and not wasted on diversions. Such interests "are routinely found to constitute significant protectable interests" in election cases justifying intervention under Rule 24. *Issa v. Newsom*, 2020 WL 3074351, at *3

(E.D. Cal. 2020); *see, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586-87 (5th Cir. 2006); *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007); *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001). All these interests are at stake in the present case.

*First*, Movants have an interest in Republican voters voting. This case implicates that legally protectable interest as a ruling in Plaintiff's favor would do grave damage to the confidence of Republican voters in the integrity of Florida's election system. Defending "the lawfulness" of the election rules that Plaintiff challenges and "protecting the integrity of [Florida's] elections" alone is a sufficient interest to justify intervention by Movants in this case. *Black Voters Matter Fund*, No. 1:20-cv-4869, Doc. 42 at 5. Rules like the one Plaintiff challenges here serve "the integrity of [the] election process," *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). Movants thus have a "direct and substantial interest" in this case because it will "affect" Movants' "ability to participate in and maintain the integrity of the election process in [Florida]." *La Union del Pueblo Entero*, 29 F.4th at 306.

Further, safeguarding Republican voter confidence in Florida's electoral process also necessitates Movants' intervention. This confidence has "independent significance" as a protectible interest. *Crawford*, 553 U.S. at 197. Such voter confidence "is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Voter confidence and election integrity also have a direct effect on voter turnout,

*see id.*, which is key to the Republican Party's mission to election of Republican candidates.

Plaintiff's attempt to change the rules of the election will shake Republican voter confidence in the accuracy of Florida's voter registration rolls, thereby deterring them from registering and turning out to vote. Plaintiff seeks a ruling that would require the state of Florida to *stop verifying* that the driver's license or social security number on an applicant's voter registration is an "exact match" with data maintained by the Florida government or the federal government. Compl. ¶¶1, 2, 4. If Plaintiff succeeds, "the confidence of [Movants'] members who are registered to vote in [Florida] in the integrity of the electoral process" will be "undermined by [Florida's] failure to comply with the list maintenance requirements" of its exact match protocol. *Judicial Watch, Inc. v. King*, 993 F. Supp. 2d 919, 924 (S.D. Ind. 2012).

*Second*, Movants have an interest in Republican candidates winning. Movants' "specific" interest in "promoting their chosen candidates" is sufficient by itself to justify intervention. *Black Voters Matter Fund*, Doc. 42 at 5. Movants rely on Florida's voter-registration lists to determine their electoral strategy, the number of staff they need in a given jurisdiction, the number of volunteers needed to contact voters, and how much they will spend contacting voters. Sudden, court-ordered changes to Florida's voter registration lists will affect the electoral prospects of candidates running as Republicans and will require the Republican Party to adjust its electoral strategy for upcoming state and federal elections. Consequently, Movants' interest in "advancing the overall electoral prospects" of Republican candidates is implicated by these proceedings. *Issa*, 2020 WL 3074351, at *3. Such an interest is "routinely found" to be protectable under Rule 24. *Id.*

As Movants are already strategizing with Republican candidates and spending resources in Florida's fast-approaching election in reliance on Florida voter registration roll data, Movants have an interest in preventing last-minute changes to those rolls that will affect the electoral prospects of Republican candidates on the ballot in November.

*Third*, Movants have an interest in Republican resources being spent wisely and not wasted on diversions. If this Court were to enjoin Florida's voter registration list matching rules, Movants would need to divert resources from other mission-critical activities, such as voter-turnout efforts, to counteract the injunction against list matching procedures. Movants rely on accurate voter-registration lists for a variety of their activities. *See supra*, p.11. Movants' success also depends on their ability to reach voters quickly and accurately with election-related communications. Those activities cost money. Safeguarding Movants' mission-critical activities from costs associated with sudden court-ordered changes in election procedures is a legitimate "interest" under Rule 24(a)(2). *E.g.*, *Siegel*, 234 F.3d at 1169 n.1; *Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020).

This interest is not "generalized" or shared by all Floridians. Not all Floridians have an interest in electing *Republicans* or conserving the resources of the *Republican Party*. As the Democratic Party has explained, political parties "have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither defendants nor any other party in this lawsuit share." *Wood*, No. 1:20-cv-5155, Doc. 13 at 16. Plaintiff invokes a similar interest in support of its standing to file this lawsuit. *See* Compl. ¶19 (alleging that "Florida's 'exact match' policy is forcing

Florida Rising to divert resources" thereby frustrating "a core component of Florida Rising's mission"). If this interest is sufficient to support Plaintiff's standing, then it is sufficient to satisfy the Rule 24(a) interest requirement to justify intervention by Movants. *See Chiles*, 865 F.2d at 1213 ("a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24"). In short, if Plaintiff has standing to bring this lawsuit, then Movants have an interest in defending against this lawsuit. *See Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1480 (11th Cir. 1993) ("a movant who shows standing is deemed to have a sufficiently substantial interest to intervene"). For these reasons, Movants have "significant interests at stake" in this case. *New Ga. Project*, 2021 WL 2450647, at *2.

### C.    This action threatens to impair Movants' interests.

Proceeding without Movants "may as a practical matter impair or impede [Movants'] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). To prove potential impairment, Movants "need only show" that if they cannot intervene, "there is a possibility" that their "interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307. This is easily accomplished. Plaintiff's request for a permanent injunction, if granted, would "change the entire election landscape for those participating" in the upcoming election. *Id.* It would "change what [Movants] must do to prepare for upcoming elections." *Id.* And Movants will be forced to expend "resources to educate their members on the shifting situation in the lead-up to the 202[4] election." *Id.* Each of these potential practical impairments standing

10

alone are enough to justify intervention. Movants will plainly "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996).

More concretely, granting Plaintiff's requested relief will result in more ineligible voters being added to and remaining on Florida's voter rolls, which impairs Movants' interest in accurate registration lists. *See supra*, p.11. Plaintiff disagrees, claiming that "[d]ue to its inherent inaccuracy," the exact match protocol "disrupts the orderly administration and accurate record-keeping in Florida elections." Compl. ¶81. But the opposite is true. Florida's exact-match protocol ensures that election officials have the necessary tools to maintain accurate voter rolls. Enjoining enforcement of that protocol on the eve of the election inhibits the State's obligation to "ensure that voter registration records in the State are accurate and are updated regularly," which includes a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." 52 U.S.C. §21083(a)(4). Though Plaintiff disagrees, "in resolving a motion to intervene," this Court "cannot assume" that Plaintiff "will ultimately prevail on the merits." *Pavek v. Simon*, 2020 WL 3960252, at *3 (D. Minn. July 12, 2020). At least for this motion, the Court must accept Movants' defenses as correct. *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984).

Moreover, "as a practical matter," Fed. R. Civ. P. 24(a)(2), this proceeding might be the only time that Movants can litigate Plaintiff's claims. If the Plaintiff pursues the preliminary injunctive relief it requests in its complaint, *see* Compl. ¶109, this Court's decision could be the final word on the laws governing the next election. For that reason, when voter-registration groups bring late-breaking challenges to a State's voter rolls, the

Republican Party has previously been granted intervention. *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. June 26, 2020). Because the "very purpose of intervention is to allow interested parties to air their views" before "making potentially adverse decisions," *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014), the "best" course is to give "all parties with a real stake in [the] controversy" an "opportunity to be heard." *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D. Defendants do not adequately represent Movants' interests.

Inadequacy of representation is not a demanding standard. Rule 24(a)(2) requires this Court to allow Movants to intervene if existing party representation "'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). And "the burden of making that showing should be treated as minimal." *Id.* Although courts sometimes presume representation is adequate when "an existing party seeks the same objectives" as the Movants, that "presumption is weak and can be overcome if the [Movants] present some evidence to the contrary"—for example, a "difference in interests." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311-12 (11th Cir. 2004). Even where an intervenor has "similar, but not identical interests," to the State, the intervenor's "interests are not adequately represented." *Id.* at 1312 (cleaned up); *see also Huff v. Comm'r*, 743 F.3d 790, 800 (11th Cir. 2014) ("[W]hile the Taxpayers have taken the same litigation position as the [state defendants]," their "interest in their overall tax liability is *not the same* as the [state defendants'] interest in how the taxes are apportioned." (emphasis added)).

Movants easily satisfy this minimal standard. No party to this case shares Movants' interests in promoting Republican candidates' electoral success, supporting Republican voters, and conserving Republican Party resources. Much less does any party adequately

represent those interests. The Defendants are Florida state and local government officials, Compl. ¶¶21-26, who must necessarily represent "the public interest." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). By contrast, Movants' interest is inherently "partisan." *La Union del Pueblo Entero*, 29 F.4th at 309. "Neither the State nor its officials can vindicate such an interest while acting in good faith." *Id.* State Defendants have no interest in the election of Republican candidates, the mobilization of Republican voters, or the costs associated with either. Instead, as state and local officials acting on behalf of Florida citizens and the State itself, the State Defendants must consider "a range of interests likely to diverge from those of the intervenors." *Meek*, 985 F.2d at 1478. Those clashing interests include: the interests of Plaintiff, *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991), "the expense of defending the current [rules] out of [state] coffers," *Clark*, 168 F.3d at 461, and "the social and political divisiveness of the election issue" to the State, *Meek*, 985 F.2d at 1478.

These diverging interests make the State Defendants less likely to present the same arguments, less likely to exhaust all appellate options, and more likely to settle. *Clark*, 168 F.3d at 461-62. By contrast, Movants care about this case's effect on the Republican Party, Republican candidates, and Republican voters. This stark divergence of interests meets the "minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene v. Raffensperger*, 2022 WL 1045967, at *4 (N.D. Ga. Apr. 7, 2022).

Additionally, no State Defendant opposes Movants' intervention. As many courts have stressed, the government's "silence on any intent to defend [the Movants'] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d

39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because State Defendants "nowhere argue" that they "will adequately protect [Movants'] interests," Movants have "raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. Aug. 1, 2017). Movants thus should be granted intervention under Rule 24(a)(2).

## II.   Alternatively, Movants are entitled to permissive intervention.

Regardless of whether the Court finds that Movants are entitled to intervene by right, Movants satisfy the statutory requirements for permissive intervention under Rule 24(b). Movants' "claim or defense" shares with "the main action a common question of law or fact." Fed. R. Civ. P. 24(b). And Movants' intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Id*.

Permissive intervention may be the simplest path for this Court to grant Movants' motion. To grant permissive intervention, this Court need not even find that Movants are inadequately represented, *Black Voters Matter*, No. 1:20-cv-4869, Doc. 42 at 5, or consider whether Movants have "a direct personal or pecuniary interest in the subject of the litigation," *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940). Unsurprisingly, this Court and many other federal courts have held that permissive intervention by Republican party organizations is justified in similar election disputes. *See, e.g.*, *Brown v. Detzner*, Minute Order, No. 3:12-cv-852 (M.D. Fla. Sept. 17, 2012); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020).

The requirements of Rule 24(b) are met here. Movants will raise defenses that share common questions of law and fact with existing parties. Plaintiff alleges that

Florida's exact-match voter registration protocol violates the First and Fourteenth Amendments and an assortment of federal statutes.  Compl. ¶¶83-112. Movants deny each of these allegations. Movants' defenses and those brought by State Defendants "ultimately turn on the same legal issue," the legal "validity of the [challenged rules]." *Greene*, 2022 WL 1045967, at *4. Thus, Movants and State Defendants have questions of law and fact in common.

Moreover, Movants' intervention will not unduly delay this litigation or prejudice anyone. There is no undue delay or prejudice where proposed intervenors file their motion when "litigation is in a relatively nascent stage." *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 691 (N.D. Ga. 2014). "Whatever additional burdens adding the [Movants] to this case may pose, those burdens fall well within the bounds of everyday case management." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 200 (2022). In addition, responding to Movants' arguments will not unduly prejudice Plaintiff, Fed. R. Civ. P. 24(b)(3), since Plaintiff "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate," *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Cas. Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). Allowing Movants to intervene will allow the Court "to profit from a diversity of viewpoints as [Movants] illuminate the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). In a "challenge to Florida voting procedures," where "the defendants are state and county officials," it "cannot be said with assurance that the

existing parties will frame the issues so well that the proposed intervention will add nothing of value. Even good lawyers sometimes miss things." *Nielsen*, 2020 WL 6589656, at *1. Ultimately, where a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant this motion and allow them to intervene as Defendants.

Dated: October 16, 2024

Respectfully submitted,

 */s/ Benjamin J. Gibson*

Thomas R. McCarthy*
Gilbert C. Dickey* (Lead Counsel)
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Daniel E. Nordby (FBN 14588)
Benjamin J. Gibson (FBN 58661)
Tara R. Price (FBN 98073)
SHUTTS & BOWEN LLP
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
(850) 241-1717
dnordby@shutts.com
bgibson@shutts.com
tprice@shutts.com

*pro hac vice* forthcoming

*Counsel for Proposed Intervenor-Defendants*
*the Republican National Committee and*
*Republican Party of Florida*

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01(g), Counsel for Proposed Intervenor-Defendant, the Republican National Committee, certifies that on October 8, 2024, the undersigned conferred with Counsel for Plaintiff and Counsel for Defendants concerning this Motion to Intervene. Plaintiff opposes the motion. The Secretary of State and Glen Gilzean, as the Orange County Supervisor of Elections, do not oppose the motion. Joe Scott, as the Broward County Supervisor of Elections takes no position on the motion. Counsel for intervenors have not heard from the remaining Defendants regarding their positions.

*/s/ Benjamin J. Gibson*

## CERTIFICATE OF SERVICE

**I CERTIFY** that on October 16, 2024, I electronically filed this document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Benjamin J. Gibson*