**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA RISING TOGETHER, INC.,

      *Plaintiffs*,

*v.*                             Case No.: 6:24-cv-01682-WB-EJK

CORD BYRD, *in his official capacity as*
*Secretary of State for the State of Florida*,
et al.

      *Defendants*.
_____/

## SECRETARY BYRD AND SUPERVISORS OF ELECTIONS' JOINT MOTION TO STAY ALL DISCOVERY OBLIGATIONS PENDING RESOLUTION OF MOTIONS TO DISMISS

       Secretary of State Cord Byrd and the Supervisors of Elections, pursuant to Federal Rule of Civil Procedure 26(c), move to stay all discovery pending this Court's ruling on the Secretary's Motion to Dismiss Complaint (DE 70) and the SOE Defendants' Joint Motion to Dismiss (DE 67) (collectively "the Motions").

## INTRODUCTION

       Plaintiff Florida Rising challenges Florida's requirement that applicants verify their identity and prove their eligibility to vote before they are added to the voter rolls. Florida Rising claims that this verification statute imposes an illegal precondition to voting that disenfranchises tens of thousands of eligible Florida voters. The Motions, however, demonstrate that Florida Rising lacks associational and organizational standing and that the Complaint fails to state a claim under the First and Fourteenth Amendments, the Voting Rights Act, and the National Voter Registration Act. The Defendants should not be

subjected to unnecessary and costly discovery while the Court decides these dispositive threshold issues. Accordingly, the Court should stay discovery until it rules on the Motions.

## LEGAL STANDARD

This Court has inherent authority to control its own docket, which includes staying discovery. *E.g.*, *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002) ("[D]istrict courts are entitled to broad discretion in managing pretrial discovery matters.").[1] This Court also has a responsibility to ensure the discovery process does not impose "burdens on the judicial system," *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367–68 (11th Cir. 1997), by "wast[ing] . . . judicial and private resources," *Perez*, 297 F.3d at 1263 (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998)). Where discovery would create such a burden, "[m]otions to stay discovery may be granted pursuant to Rule 26(c), Fed. R. Civ. P., and the moving party bears the burden of showing good cause and reasonableness." *George & Co. LLC v. Cardinal Indus., Inc.*, No. 2:18-CV-154-FTM-38MRM, 2019 WL 1468514, at *1 (M.D. Fla. Feb. 19, 2019) (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)).

## ARGUMENT

"In deciding whether to stay discovery pending resolution of a motion to dismiss, the court must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Koock v. Sugar & Felsenthal, LLP*, No. 8:09-CV-609-T-17EAJ, 2009 WL 2579307, at *2 (M.D.

---

[1] *See also* Fed. R. Civ. P. 16(b)(2),(4) (permitting the Court to alter the issuance of a scheduling order for good cause); Fed. R. Civ. P. 26(d)(3) (permitting the Court to alter the sequence of discovery "for the parties' . . . convenience and in the interests of justice").

Fla. Aug. 19, 2009). This requires the Court to "take a preliminary peek at the merits of the motion to dismiss to see if it appears to be clearly meritorious and truly case dispositive." *Feldman*, 176 F.R.D. at 652-53 (quotation marks omitted). Courts should stay discovery where "there appears to be an immediate and clear possibility that the Court will grant the motion [to dismiss]." *Alcindor v. DeJoy*, No. 8:20-CV-1620-CEH-JSS, 2022 WL 19636, at *2 (M.D. Fla. Jan. 3, 2022) (internal citation omitted); *see also Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003), *aff'd*, 87 Fed. Appx. 713 (11th Cir. 2003) ("[G]ood cause to stay discovery exists" where "resolution of a [defendant's] preliminary motion may dispose of the entire action.") (cleaned up).

A court's peek at the merits should also gauge the harm a stay would cause the plaintiff. A stay "is not likely to unduly prejudice or tactically disadvantage" a plaintiff when the case "is in [its] early stages." *C Pepper Logistics LLC v. Nunez*, No. 6:21-CV-542-WWB-EJK, 2021 WL 2792054, at *1 (M.D. Fla. June 2, 2021). More broadly, "[d]elaying discovery until the Court rules on whether it has jurisdiction and Plaintiff has stated a viable cause of action will [typically] cause [a plaintiff] little harm." *Latell v. Triano*, No. 2:13-CV-565, 2014 WL 5822663, at *2 (M.D. Fla. Feb. 28, 2014).

Here, the Court has good cause to stay discovery pending its ruling on the Motions. Florida Rising lacks Article III standing and the Complaint fails to state a claim under the First and Fourteenth Amendments, the National Voter Registration Act, and the Voting Rights Act. These fatal defects create "an immediate and clear possibility that the Court" will dismiss the Complaint. *Alcindor*, 2022 WL 19636, at *2.[2] And staying discovery will

---

[2] Plaintiffs have not responded to the Motions because they were filed on December 2, 2024. DE 70. But their response will not change the analysis because responses to motions to dismiss cannot supply factual allegations to rescue deficient pleadings. *See,*

not prejudice Plaintiffs because they only recently issued their first written discovery requests.[3]

### I.   There Is Good Cause To Stay Discovery Because Florida Rising Lacks Article III Standing And The Complaint Fails To State A Claim For Relief.

**1.** As the Secretary explains in his Motion, Florida Rising lacks Article III standing thrice over.

First, Florida Rising lacks associational standing because it does not identify a member harmed by the voter verification statute. *See, e.g., Jacobson v. Fla Sec'y of State*, 974 F.3d 1236, 1249 (11th Cir. 2020) (Democratic National Committee lacked associational standing because "it failed to identify any of its members, much less one who will be injured by the [challenged] ballot statute"); *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1204 (11th Cir. 2018).[4] And it does not demonstrate organizational standing through a diversion of resources theory, despite alleging that the voter verification statute "forc[es] Florida Rising to divert resources to resolve related voter-registration problems for Floridians trying to register to vote," DE 1 at ¶ 19, because it does not show that the voter verification statute directly interferes with Florida Rising's "core business activit[y]" of registering Floridians to vote. *See FDA v. All. for Hippocratic*

---

*e.g.*, *Jepsen v. Lornamead, Inc.*, No. 8:12-CV-1811-T-30TGW, 2012 WL 5989244, at *3 n.2 (M.D. Fla. Nov. 29, 2012) ("[T]his Court cannot rely on factual allegations in a response to a motion to dismiss when considering the sufficiency of the complaint itself."); *see also Huls v. Llabona*, 437 Fed. Appx. 830, 832 n.5 (11th Cir. 2011) (finding the plaintiff's argument, which was raised for the first time in his response to the defendant's motion to dismiss, improper because the plaintiff did not seek leave to file an amended complaint).

[3] Florida Rising issued written requests for production to each of the five Defendants on December 13, 2024.
Defendants' responses are due January 13, 2025.

[4] DE 70 at 4-5.

*Medicine,* 602 U.S. 367, 395 (2024).[5] In fact, Florida Rising concedes the opposite by acknowledging that its diversion of resources has "assisted impacted voter registration applicants [in] navigat[ing] the barrier to registration erected by the 'exact match' process so that they can vote." DE 1 at ¶ 20.

Further, Florida Rising does not demonstrate *from where* it diverted its resources, *see Ga. Ass'n of Latino Elected Offs. v. Gwinnett Cnty. Bd. of Registration & Elections* (*GALEO*), 36 F.4th 1100, 1114 (11th Cir. 2022), and does not show that its members face a credible threat of their applications being denied by the voter verification statute, which applies only to applications submitted through the Department's online portal or to specific locations, because it does not allege how they plan to register, *see City of S. Miami v. Governor of Fla.,* 65 F.4th 631, 638 (11th Cir. 2023).

Second, Florida Rising lacks standing because it does not trace its alleged injury to the Department of State or to the SOE Defendants. Florida Rising claims that errors in the database(s) the Department uses to verify applicants' information produces false results that disenfranchise its members. But it fails to mention that federal law requires the Department to verify this information and dictates which databases it must use. *See* 52 U.S.C. § 21083(a)(5) ("Verification of Voter Registration Information"); *id.* at (a)(5)(B) (requiring the Department to use the Florida Department of Highway Safety and Motor Vehicle's and the Social Security Administration's databases). An order invalidating the voter verification statute would not impact this federal requirement. And "a plaintiff lacks standing to sue over a defendant's action if an independent source would have caused him to suffer the same injury." *Walters v. Fast AC, LLC,* 60 F.4th 642, 650–51 (11th Cir.

---

[5] *Id.* at 5-10.

2023) (cleaned up). Here, that source is federal law. *Id*. at 650 (noting the Eleventh Circuit "ha[s] held traceability to be lacking if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct.") (cleaned up).

In addition, Florida Rising asks this Court to approve the applications of every otherwise eligible applicant in Florida whose application was denied based on the voter verification statute. DE 1 at ¶ 109(c). But neither the Secretary nor the SOE Defendants can place every such applicant on the voter rolls – such relief would require adding every supervisor of elections to this action. § 97.053(6), Fla. Stat.; *see also Jacobson*, 974 F.3d 1236. And Florida Rising does not limit its request for relief to the jurisdictions of the four defendant supervisors. Thus, Florida Rising cannot show that a favorable judgment will fully redress its harm. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–62 (1992) (plaintiffs lacked redressability against Defendant Secretary of the Interior because it could not implement requested remedy).

Last, Florida Rising's claims invoke the right to vote. Florida Rising is an organization without the right to vote. *See Vote.Org v. Callanen,* 39 F.4th 297, 303 (5th Cir. 2022) ("[A]n organization plainly lacks the right to vote."). Thus, Florida Rising asserts the rights of its third-party members. But plaintiffs cannot rest their claims on the legal rights of third parties unless they have a close relationship with the person(s) possessing the right(s) *and* something prevents the possessors from asserting their own interests. *Kowalski v. Tesmer,* 543 U.S. 125, 130 (2004). Florida Rising does not allege, much less demonstrate, that either condition applies here. Thus, Florida Rising lacks prudential standing to assert the voting rights of its members.

6

\* \* \* \* \*

For these reasons, "there is an immediate and clear possibility that the Court will grant the motion [to dismiss]" for lack of standing. *Alcindor*, 2022 WL 19636, at \*2. "[S]taying discovery is appropriate" in such situations. *George & Co. LLC*, 2019 WL 1468514, at \*1 (staying discovery where "there is a significant possibility that [the] Court will grant [the] Motion to Dismiss") (cleaned up); *see also, e.g.*, *Seaway Two Corp. v. Deutsche Lufthansa Aktiengesellschaft*, No. 06-20993-CIV-ALTONAGA/Turnoff, 2006 WL 8433652, at \*1 (S.D. Fla. Nov. 17, 2006) (staying discovery because motions to dismiss showed that if they were granted, "the need for discovery could be eliminated completely or the scope of discovery could be narrowed significantly"); *Khan v. Rundle*, No. 05-23123-CIV-ALTONAGA/Turnoff, 2006 WL 8433502, at \*1–2 (S.D. Fla. July 17, 2006) (holding stay of discovery was appropriate where defendants raised case-dispositive claims in their motion to dismiss).

Indeed, courts in the Eleventh Circuit routinely stay discovery – or the entire action – pending motions to dismiss for lack of standing. *See, e.g.*, *Hetherington v. Lee*, No. 3:21-cv-671-MCR-EMT, 2021 WL 7084092, at \*1 (N.D. Fla. June 24, 2021) (staying the entire action pending resolution of "arguably meritorious challenges based on standing and Eleventh Amendment immunity"); *Lopez v. Miami-Dade Cnty.*, 145 F. Supp. 3d 1206, 1208 (Fla. S.D. 2015) (staying discovery pending resolution of the Court's subject matter jurisdiction to "avoid unnecessary expenditures of time and resources" and due to the "public interest in judicial economy and efficiency"); *Dayem ex rel. Dayem v. Chavez*, No. 13-CV-62405, 2014 WL 12588513, at \*1 (S.D. Fla. Mar. 11, 2014) (staying discovery pending resolution of motions to dismiss asserting, among other things, lack of standing

and subject matter jurisdiction); *Latell*, 2014 WL 5822663, at *2 ("Because there are pending motions challenging personal jurisdiction, standing, and the legal sufficiency of the amended complaint, the Court will stay discovery for a period of 90 days"); *Ave Maria Univ. v. Sebelius*, No. 2:12-CV-88, 2012 WL 13059434, at *2 (M.D. Fla. Nov. 28, 2012) (granting motion to stay where defendants raised potentially meritorious jurisdictional argument); *Varga v. Palm Beach Capital Mgmt., LLC*, No. 09-82398-CIV, 2010 WL 8510622, at *1 (S.D. Fla. Sept. 3, 2010) (finding good cause to stay discovery pending ruling on motion to dismiss because standing and venue are "thres[hold] legal issues that are case-dispositive").

**2.** The Motion also demonstrates that the Complaint fails to state a claim under the First and Fourteenth Amendments, the National Voter Registration Act (NVRA), and the Voting Rights Act.

In Count I, Florida Rising brings a facial challenge to the voter verification statute under the First and Fourteenth Amendments. Facial challenges must show that the statute is unconstitutional in all circumstances. Florida Rising cannot, and does not, make this showing. First, the Northern District of Florida rejected an identical undue burden claim in *Florida NAACP v. Browning*, 569 F.Supp.2d 1237, 1256-57 (N.D. Fla. 2007). Second, the alleged burden on the right to vote applies only if the applicant(s) (1) possess the right to vote and (2) provide accurate information that does not match the numbers on file with the Department of Highway Safety and Motor Vehicles (DHSMV) or the Social Security Administration (SSA) through no fault of their own. If an applicant is not eligible to vote, then there is no right to burden. Likewise, if the applicant is eligible but provides incorrect information on the application, his or her own mistake caused the alleged

burden. If the applicant's information is accurate and matches the numbers on file, he or she is approved and placed on the voter rolls. Since the alleged burden does not apply in these circumstances, Florida Rising cannot show the voter verification statute is unduly burdensome in all applications.

In addition, courts apply the *Anderson-Burdick* test to undue burden claims. When applying the test, courts consider "the laws and their reasonably foreseeable effect on *voters generally,"* not on a subset of the electorate. *Crawford v. Marion Cnty Election Bd.*, 553 U.S. 181, 206 (2008) (Scalia, J., concurring). Here, Florida Rising alleges that the voter verification statute unduly burdens applicants whose information does not match their numbers on file with the DHSMV or SSA and who do not, or cannot, verify or supplement that information in time. *See* DE 1 at ¶¶ 55, 57. Eligible applicants that provide verifiable information are approved and suffer no burden. Thus, Florida Rising seeks to vindicate only the rights of rejected applicants, rather than the rights of Florida voters generally. Such allegations do not state an undue burden claim. *See Crawford,* 553 U.S. at 202-03 (concluding Indiana law did not impose an undue burden because "[w]hen we consider only the statute's broad application to all Indiana voters we conclude that it 'imposes only a limited burden on voters' rights'").

Count II fails to state a claim under § 8 of the National Voter Registration Act because that section covers programs that "ensur[e] the maintenance of an accurate and current voter registration roll." 52 U.S.C. 20507(b). In other words, under the plain meaning of "maintenance," § 8 applies only to laws that keep the list of registered persons "in proper condition" or "in good order." *See Husted v. A. Philip Randolph Inst.,* 584 U.S. 756, 764 (2018) (recognizing § 8(b) as a limit on "state removal programs"). That does

not include the voter verification statute, which regulates the Department's "[a]cceptance of voter registration applications." *See* § 97.053, Fla. Stat.

In addition, even if § 8 applied to the voter verification statute, the provision states that "maintenance" programs shall be "uniform" and "nondiscriminatory." 52 U.S.C. § 20507(b)(1). The Complaint does not plausibly allege a violation of either standard. "Uniform" means "[c]onforming to one rule, mode, pattern, or unvarying standard" and "applicable to all places or divisions of a country." *Uniform,* BLACK'S LAW DICTIONARY (6th ed. 1990). It is undisputed that the voter verification statute is a general law that applies uniformly statewide. *See* Ch. 2005-278, Laws of Fla., § 6 (2005); *see also* Art. III, § 11(a)(1), Fla. Const. ("There shall be no special law or general law of local application pertaining to [the] election, jurisdiction or duties of officers, except officers of municipalities, chartered counties, special districts or local governmental agencies"). Likewise, plaintiffs asserting § 8 claims must show both discriminatory effect *and* intent. *See Husted*, 584 U.S. at 779. But the Complaint does not allege a single fact suggesting that Defendants intended to discriminate against a minority group.

Last, Count III claims the voter verification statute violates § 2(a) of the Voting Rights Act, which prohibits the "denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 USC 10301(a). Plaintiffs making § 2(a) claims must show that the challenged law "*caused* the denial or abridgment of the right to vote on account of race." *Greater Birmingham Ministries v. Sec'y of State of Alabama,* 992 F.3d 1299, 1330 (11th Cir. 2021). In other words, they must demonstrate that minority voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Nipper v.*

*Smith,* 39 F.3d 1494, 1515 (11th Cir. 1994). This occurs when voting is not "equally open" to minorities. *Brnovich v. Democratic Nat'l Comm.,* 594 U.S. 647, 671 (2021).

But Florida Rising does not show, or even allege, that Florida's voter registration process is not "equally open" to minority voters. Instead, Plaintiff alleges that the voter verification statute has a "disparate and discriminatory impact on Black citizens and other citizens of color." DE 1 at ¶¶ 60, 74. Simply highlighting a racial disparity between those rejected by the voter verification statute, however, does not state a claim under § 2. *See Gonzalez v. Arizona,* 677 F.2d 383, 405 (9th Cir. 2012) (en banc) ("[A] § 2 challenge based purely on a showing of some relevant statistical disparity between minorities and whites, without any evidence that the challenged voting qualification causes that disparity, will be rejected.") *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

* * * * *

The Eleventh Circuit has made clear that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama*, 123 F.3d at 1367; *Bufkin v. Scottrade, Inc.*, 812 F. App'x. 838, 842 (11th Cir. 2020) ("Because a facial challenge to the legal sufficiency of a claim raises only questions of law, neither the parties nor the court have any need for discovery before the court rules on the motion.") (cleaned up). Accordingly, the Court has "good cause to stay discovery," *Nankivil*, 216 F.R.D. at 692 (cleaned up), and should until it rules on the Defendants' Motions. *See Rivas v. Bank of N.Y. Mellon*, 676 F. App'x 926, 932 (11th Cir. 2017) ("Granting a discovery stay until an

11

impending motion to dismiss is resolved is a proper exercise of [the trial court's] responsibility.").

## II.    Staying Discovery Will Not Prejudice Plaintiff.

"In deciding whether to stay discovery pending resolution of a motion to dismiss, the court must [also] balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Koock*, 2009 WL 2579307, at *2. Here, the likelihood that the Court will grant the Motions significantly outweighs any possible harm from a stay.

As an initial matter, for the reasons discussed *supra*, the Court is likely to grant the Motions, which will dispose of the entire case and eliminate the need for discovery. Further, challenges to subject-matter jurisdiction "outweigh any harm to Plaintiff that a delay in discovery or case management would cause." *Hetherington*, 2021 WL 7084092, at *1. Indeed, "[d]elaying discovery until the Court rules on whether it has jurisdiction and Plaintiff has stated a viable cause of action will cause Plaintiff little harm." *Latell*, 2014 WL 5822663, at *2. Moreover, "[a]llowing a case to proceed through the pretrial processes with an invalid claim . . . waste[s] the resources of the litigants in the action before the court, delay[s] resolution of disputes between other litigants, squander[s] scarce judicial resources, and damage[s] the integrity . . . of the federal judicial system." *Chudasama*, 123 F.3d at 1368.

In addition, the Motions involve straightforward issues of law that do not require factual development. Thus, discovery will not help the Court reach its decision. And staying discovery does not prejudice the parties when the discovery would have "no[] impact [on] the resolution of the [defendant's underlying] Motion[] to Dismiss." *Walden v.*

*Walden*, No. 6:17-CV-531-ORL-37DCI, 2017 WL 11725183, at *3 (M.D. Fla. Sept. 7, 2017).

Last, staying discovery would not prejudice the parties, even if the Court does not grant the Motions, because they would still "have ample opportunity to engage in discovery" after the Court's decision. *Mid-Continent Cas. Co. v. G.R. Constr. Mgmt., Inc.*, No. 2:17-CV-55-FTM-38CM, 2017 WL 3394231, at *2 (M.D. Fla. Aug. 8, 2017). Indeed, under the Court's scheduling order, discovery does not close until January 30, 2026 – more than a year from now. DE 52 at 2. And when "motions to dismiss might dispose of the entire case, and the parties have ample time to conduct discovery, [it is] appropriate to exercise [the Court's] broad discretion to stay [discovery]." *Mid-Continent Cas. Co.*, 2017 WL 3394231, at *2.

## CONCLUSION

For the reasons discussed, the Defendants respectfully request the Court stay all discovery until ruling on their Motions.

Dated: January 8, 2025,                    Respectfully submitted,

/s/ *Nicholas J.P. Meros*                   /s/ *Adam Katzman*
NICHOLAS J.P. MEROS (FBN 0120270)           ADAM KATZMAN (FBN 652431)
**SHUTTS & BOWEN LLP**                      *Deputy County Attorney*
215 South Monroe Street, Suite 804          Andrew J. Meyers
Tallahassee, Florida 32301                  **BROWARD COUNTY ATTORNEY**
(850) 241-1717                              115 S. Andrews Avenue, Suite 423
nmeros@shutts.com                           Fort Lauderdale, FL 33301
                                            (954) 357-7600
JOSEPH S. VAN DE BOGART (FBN 84764)         akatzman@broward.org
*General Counsel*
ASHLEY E. DAVIS (FBN 48302)                 *Counsel for Joe Scott, Broward County*
*Chief Deputy General Counsel*              *Supervisor of Elections*
**FLORIDA DEPARTMENT OF STATE**
500 South Bronough Street, Suite 100

Tallahassee, Florida 32399
(850) 245-6536
joseph.vandebogart@dos.myflorida.com
ashley.davis@dos.myflorida.com

SAMUEL F. ELLIOTT (FBN 1039898)
*Deputy General Counsel*
EXECUTIVE OFFICE OF THE GOVERNOR
400 S. Monroe Street
Tallahassee, FL 32399
(850) 717-9310
samuel.elliott@eog.myflorida.com

*Counsel for Secretary of State Cord Byrd*

/s/ *Michael A. Sasso*
MICHAEL ADAM SASSO (FBN 93814)
XIXI LI (FBN 1031278)
**SASSO & SASSO, P.A.**
1031 W. Morse Blvd., Suite 120
Winter Park, FL 32789
(407) 644-7161
masasso@sasso-law.com
xli@sasso-law.com

*Counsel for Glen Gilzean, Orange County Supervisor of Elections*

/s/ *Tiffiny Douglas Pinkstaff*
TIFFINY DOUGLAS PINKSTAFF (FBN 682101)
Office of General Counsel
**CITY OF JACKSONVILLE**
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
(904) 255-5072
tpinkstaff@coj.net

*Counsel for Jerry Holland, Duval County Supervisor of Elections*

/s/ *Michael B. Valdes and Jose D. Vazquez*
MICHAEL B. VALDES (FBN 93129)
*Assistant County Attorney*
JOSE D. VAZQUEZ (FBN 116269)
*Assistant County Attorney*
**MIAMI-DADE COUNTY ATTORNEY'S OFFICE**
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
(305) 375-5151
jose.vazquez6@miamidade.gov
michael.valdes@miamidade.gov

*Counsel for Christina White, Miami-Dade County Supervisor of Elections*

## LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this motion. Plaintiff's counsel opposes the relief sought in the motion.

/s/ *Nicholas J.P. Meros*
*Counsel for Secretary Byrd*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the CM/ECF filing portal, which provides notice to all parties, on January 8, 2025.

/s/ *Nicholas J.P. Meros*
*Counsel for Secretary Byrd*