## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

FLORIDA RISING TOGETHER, INC.
and FLORIDA RISING, INC.

*Plaintiffs*,

v.

CORD BYRD, in his official capacity as
Florida Secretary of State, et. al.,

*Defendants*,

REPUBLICAN NATIONAL
COMMITTEE and REPUBLICAN PARTY
OF FLORIDA,

*Intervenor-Defendants*.

No: 6:24-cv-1682

## REPUBLICAN INTERVENOR-DEFENDANTS' [CORRECTED] REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs pepper their brief with accusations that Florida "burdens" its voters. Calling them burdens doesn't make it so. Those legal conclusions are not factual allegations the Court can accept as true, since the "characterization of the resultant burden … is not a factual finding, but a legal determination." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 628 (6th Cir. 2016). And the Court owes no deference to Plaintiffs' "labels and conclusions." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022). Neither can Plaintiffs bypass Rule 12(b)(6) by calling their claims "fact-intensive." Opp. 2 (Doc. 169). No evidence is necessary to observe that the facts, accepted as true, don't show a registration system that is unduly burdensome or discriminatory. The Court can reject each of the claims for that reason alone.

## ARGUMENT

### I.  *Anderson-Burdick* applies at the pleading stage.

Rule 8 governs pleading in civil cases such as this one, though Plaintiffs do their best to avoid it. Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not have an *Anderson-Burdick* exception. In *Anderson-Burdick* cases, as in all civil cases, the Court must accept the "factual allegations" as true. *Newbauer*, 26 F.4th at 934. But it cannot credit "labels and conclusions," *id.*, such as Plaintiffs' labelling the law a "severe burden[]" unrelated to "any sufficiently weighty state interest," *e.g.*, Am. Compl. ¶¶13, 164. Those are "legal" conclusions, not "factual" allegations. *Husted*, 834 F.3d at 628; *accord Curling v. Raffensperger*, 50 F.4th 1114, 1124 (11th Cir. 2022).

Plaintiffs demand a free pass out of the pleading stage. Hiding behind conclusory labels like "burden" and "discriminate," they claim that "[s]uch questions cannot be resolved at the pleading stage," and they argue that "[t]his procedural barrier is dispositive." Opp. 5. Their position flouts the Rule 8 pleading standard and bucks the *Anderson-Burdick* caselaw. Plaintiffs must allege burdens. But it is the Court's duty to "weigh[] 'the character and magnitude of the asserted injury' to voting rights 'against the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Curling*, 50 F.4th at 1121. So Courts must apply the "*Anderson-Burdick* analysis" at the pleading stage no less than later stages of the litigation. *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1231 (11th Cir. 2025).

2

*Duke v. Cleland* does not hold otherwise. Plaintiffs cite *Duke* for the proposition that "it is 'impossible for a court to undertake the proper review required by the Supreme Court' under *Anderson-Burdick* on a motion to dismiss because no factual record has yet been developed." Opp. 4 (cleaned up). But *Polelle* defeats that blanket statement, since in *Polelle* the Eleventh Circuit affirmed the dismissal of an *Anderson-Burdick* claim at the pleading stage. 131 F.4th at 1231. And the Eleventh Circuit has made clear that when a "district court [does] not apply the *Anderson* test at all," it "is a reversible error of law." *Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1344 (11th Cir. 2020). Yet that's exactly what Plaintiffs demand here by asking the Court *not* to "perform the *Anderson-Burdick* balancing test at this time." Opp. 6.

Regardless, *Duke*—a case that preceded *Crawford*, *Polelle*, and more recent *Anderson-Burdick* cases—doesn't give Plaintiffs a get-out-of-Rule-8-free card. In *Duke*, the Eleventh Circuit remanded dismissal of the *Anderson-Burdick* claim because the State had "not as yet asserted its precise interests justifying the burden imposed by its election law." 5 F.3d at 1405. Here, however, the State *has* asserted a variety of interests justifying the law. *See* Sec'y Mot. to Dismiss 25-26 (Doc. 148). Moreover, *Duke* relied (as Plaintiffs do) on the outdated notion that "[t]he existence of a state interest … is a matter of proof" that requires "a factual determination." 5 F.3d at 1405 n.6. The Eleventh Circuit has since clarified that "*Anderson* does not require any evidentiary showing or burden of proof to be satisfied by the state government." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009) (quoting *Anderson v.*

*Celebrezze*, 460 U.S. 780, 796 (1983)). So the Court must accept the State's interests on their face.

"When evaluating a motion to dismiss, the first step is to 'eliminate any allegations in the complaint that are merely legal conclusions.'" *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). But Plaintiffs blur the line between factual allegations and legal conclusions. The Court must, for example, accept Ms. Bach's story as true. *See* Am. Compl. ¶¶104-113. But it cannot credit Plaintiffs' legal conclusion that "that the Match Protocol is not supported by any State interest sufficient to justify the burdens it imposes." Opp. 6. The Court must accept Plaintiffs' statistics as true. *See* Am. Compl. ¶¶121-140. But it cannot credit Plaintiffs' legal conclusion that those statistics show "a disparate and discriminatory impact on Black citizens and other citizens of color." *Id.* ¶124. Plaintiffs confuse facts and law, and the Court need not credit a "vague contention that further factual development could demonstrate the severity of the burdens." *Daunt v. Benson*, 999 F.3d 299, 313 (6th Cir. 2021).

Neither does *Democratic Executive Committee of Florida v. Lee* revive Plaintiffs' claim. 915 F.3d 1312 (11th Cir. 2019). In that case, the court acknowledged that "Florida has a legitimate and strong interest in preventing voter fraud," among other "legitimate and strong interests." *Id.* at 1322-23. The court held that those interests did not outweigh "the serious burden Florida's signature-match scheme imposes on vote-by-mail voters who have belatedly been notified of a signature mismatch." *Id.* at 3125. *Lee* does not absolve courts from performing that analysis at the pleading stage. To the

contrary, it confirms that weighing the burdens and benefits of an election law are legal questions. *Id.* at 1318-19. And because this case is far afield from signature matching, *Lee*'s analysis on Florida's signature law is of little help. *Crawford* still controls.

Plaintiffs' opposition only highlights what they failed to plead. They admit "the absence of any evidence on key factual questions," such as "how many disenfranchised voters were actually ineligible; whether less restrictive alternatives exist; the Match Protocol's actual fraud-prevention efficacy; and the real costs imposed on voters attempting to cure." Opp. 5. But the Amended Complaint is devoid of allegations about "how many disenfranchised voters were actually ineligible" and "whether less restrictive alternatives exist." *Id.* Plaintiffs can't complain that they need *evidence* of those facts when they failed to allege those facts. As for the "fraud-prevention efficacy," *id.*, "*Anderson* does not require any evidentiary showing" on those state interests, *Common Cause*, 554 F.3d at 1353.

That this case concerns registration steps makes it even less constitutionally suspect. *Contra* Opp. 7-8. Plaintiffs claim that Intervenors "ignore[] the constitutional significance of being denied registration altogether." *Id.* at 8. But they don't explain that significance themselves. That Florida's identity check occurs "months before the election at the registration stage" doesn't distinguish *Crawford*. *Contra id.* at 8. It just gives Floridians more time to comply and correct any errors. Moreover, the "curing process" isn't "burdensome." *Contra id.* 8. It's an *accommodation*. Similarly, Plaintiffs' argument against provisional ballots just describes what a provisional ballot does. *See* Opp. 9-10 ("even if an unverified applicant … casts a provisional ballot, that ballot will

still be rejected unless the applicant cures the registration deficiency within two days following the election"). Of course "an unverified applicant" can't vote, yet Plaintiffs paint that reality of elections as a bug in the system. That the State "accommodates" voters by allowing them to cast a ballot and cure their verification after the election "is an indulgence—not a constitutional imperative that falls short of what is required." *Crawford*, 553 U.S. at 209 (Scalia, J., concurring in the judgment).

As for discrimination, Intervenors do not "ignore that the Match Protocol is far from neutral." *Contra* Opp. 8. Intervenors explained why "Florida's law is *facially* neutral," which is what matters under *Anderson-Burdick*. GOP Mot. to Dismiss 5 (Doc. 145) (emphasis added). Even if the Court applied Plaintiffs' preferred disparate-effects test to determine the law's neutrality, Intervenors explained why that analysis doesn't support a plausible inference of discrimination. *See id.* at 19-24.

At bottom, Plaintiffs don't allege facts that support a plausible inference that Florida's procedures violate the Constitution. Take Plaintiffs' numbers, stories, and other *factual* allegations as true. Those allegations put this case squarely in the realm of *Crawford*. Applying *Crawford*'s legal principles—as the Court must—warrants dismissing Plaintiffs' Amended Complaint.

## II.    The NVRA claim fails because Florida's identification procedures are not part of voter-roll maintenance.

Plaintiffs' fail to revive their NVRA claim for two reasons. First, "Section 8(b) does not apply to state programs regarding individuals not yet registered to vote." *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1077, 1095 (D. Ariz. 2023), *aff'd in part, vacated*

*in part, remanded*, 129 F.4th 691 (9th Cir. 2025). Second, Section 8(b) claims require "discriminatory intent" and a discriminatory "trigger." *Husted v. A. Philip Randolph Institute*, 584 U.S. 756, 776, 779 (2018). Plaintiffs allege neither.

***First***, Section 8(b) applies only to maintenance programs or activities for "voter registration roll[s]." 52 U.S.C. §20507(b). It does not apply to registration applications. Plaintiffs stretch the text past its breaking point by arguing that Florida's identification procedures fit within the word "maintenance" in this statutory subsection. Opp. 14-15. But they fail to answer a key question: "maintenance" of what? Section 8(b) provides the answer: "maintenance" of the "voter roll[s]," 52 U.S.C. §20507(b)—not maintenance of the application process. The Court need not look beyond that plain text. But if it did, statutory context, legislative history, and caselaw support it.

Start with statutory context. Section 8(b) must be understood in relation to Section 8(a)'s "general program" requirement. 52 U.S.C. §20507(a)(4). Section 8(a) requires States to conduct a general program that makes a reasonable effort to remove the names of registrants who become ineligible to vote by reason of a change in residence. *Id*. It says this general program must be conducted "in accordance with subsection[] (b)." *Id.* So subsection (b) is not a free-standing prohibition that applies to every decision Florida takes concerning voter registration. Rather, it applies to the "general program" that Florida conducts "to remove the names of ineligible voters from the official lists of eligible voters" under Section 8(a). *Id*. Nothing in Section 8(b) mentions applicants or applications—only "person[s]" already on "the official list of voters registered to vote." *Id*. at §20507(b)(2). Section 8(b) is about programs or activities that a

7

State puts in place to subsequently "[c]onfirm[]" that the registrations of persons who are already registered to vote are "accurate and current." *Id.* at §20507(b).

Legislative history supports this interpretation. Plaintiffs argue that Section 8(b) is not "confine[d]" to "voter removal or purge programs." Opp. 14. But according to the NVRA's committee reports, "[t]he purpose of [Section 8(b)] is to prohibit selective or discriminatory purge programs." S. Rep. No. 103-6, at 31; H.R. Rep. No. 103-9, at 15. A "purge" of the voter rolls doesn't involve applications. It involves existing registrations. Relying on the committee reports, Plaintiffs argue that "registration is complete upon submitting the form" to the registrar. Opp. 16 (cleaned up). But they leave out that the reports made that statement for "purposes" of clarifying the meaning of a portion of "[s]ubsection (a)," which applies only to "applicants." S. Rep. No. 103-6, at 30; H.R. Rep. No. 103-9, at 14; 52 U.S.C. §20507(a)(1)-(3),(5). By contrast, Section 8(b) applies only to "purge[s]" of registrations that have already been added to the "rolls." S. Rep. No. 103-6, at 30; H.R. Rep. No. 103-9, at 15.

The Supreme Court confirms this reading. In *Husted*, the Court said that Section 8(b)(1) imposes a general limitation "applicable to state *removal* programs." *Husted*, 584 U.S. at 764. Plaintiffs argue this is "dicta." Opp. 16. But "dicta from the Supreme Court is not something to be lightly cast aside." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (cleaned up). The Court's description of Section 8(b) is not "throwaway" dicta but "carefully articulated analysis" in the Court's description of the NVRA that shows how Courts should read that statutory provision. *Id.* at 1325. It "must be treated as authoritative." *Id.* at 1326 (cleaned up). In any event, Plaintiffs

provide no reason to depart from the Court's interpretation, which accords with the statute's text, context, and legislative history.

***Second***, even if Florida's identification procedures qualified as a list-maintenance program, those procedures are uniform because they apply to everyone attempting to register to vote. Plaintiffs argue that Florida's identification procedures don't apply to "three groups of people: (1) applicants who register to vote at the [DMV]; (2) applicants who register online; and (3) applicants who do not have a PIN." Opp. 18. But Plaintiffs admit that information in DMV applications must be "synced" with "Florida's driver license database" so that it "matches." Am. Compl. at ¶143. If it "does not match, the applicant will not be able to complete the online transaction." *Id.* ¶142. And all applicants must produce the same identifying information that matches government databases to successfully register to vote. *See* Fla. Stat. §97.053(5)(a).

Neither do Plaintiffs allege "discriminatory intent" behind Florida's identification procedures. *Husted*, 584 U.S. at 779. Because they don't allege intent, they argue it isn't a pleading requirement. Opp. 19. But it is. *Husted* says intent is necessary to state a Section 8(b)(1) claim. 584 U.S. at 779. Although *Husted* itself wasn't a Section 8(b)(1) case, the Court clarified the standard for those claims in response to the dissent's argument that "discriminatory intent" is not necessary, *Husted*, 584 U.S. at 809 (Sotomayor, J., dissenting). Plaintiffs' preferred cases looking to disproportionate impact were either decided before *Husted*, or relied on pre-*Husted* reasoning. *See* Opp. 19.

### III. The VRA claim fails because Plaintiffs allege "mere inconvenience."

Plaintiffs fail to state a VRA claim because "[m]ere inconvenience cannot be enough to demonstrate a violation of § 2." *Brnovich v. DNC*, 594 U.S. 647, 669 (2021). Plaintiffs argue that deciding their VRA claim requires "factual determinations that are unripe for adjudication at this stage." Opp. 22. But no factual development is required to observe that the alleged burdens are minimal. *See Crawford*, 553 U.S. at 198. Plaintiffs argue that whether the burdens are "de minimis" and the racial disparities "significant" are "factual determinations that are unripe for adjudication at this stage." Opp. 22. That's not true. The "characterization of the resultant burden … is not a factual finding, but a legal determination." *Husted*, 834 F.3d at 628. Likewise, the Court must accept the *existence* of the alleged disparities as true, but not their "significan[ce]." *Contra* Opp. 22. The significance is a legal determination. *See Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1330 (11th Cir. 2021).

In any event, Plaintiffs have no response to Intervenors' argument that their allegations are self-defeating. *See* GOP Mot. to Dismiss 22. As Plaintiffs admit, "[a] major driver of the large racial disparities is the fact that [voter-registration organizations] like Florida Rising Together are registering large numbers of Black and other non-white applicants." Am. Compl. ¶147. Taking that allegation as true forecloses the inference that Florida's law, rather than Plaintiffs' racially targeted efforts, is to blame.

### CONCLUSION

The Court should grant the motion to dismiss the Amended Complaint.

10

Dated: March 18, 2026

Respectfully submitted,

 /s/ *Daniel E. Nordby*

Gilbert C. Dickey* (Lead Counsel)
Thomas R. McCarthy*
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com


*admitted *pro hac vice*

Daniel E. Nordby
  Fla. Bar No. 14588
Benjamin J. Gibson
  Fla. Bar No. 058661
Tara R. Price
  Fla. Bar No. 98073
SHUTTS & BOWEN LLP
215 South Monroe St., Ste. 804
Tallahassee, Florida 32301
(850) 241-1717
dnordby@shutts.com
bgibson@shutts.com
tprice@shutts.com

*Counsel for Intervenor-Defendants*
*the Republican National Committee and*
*Republican Party of Florida*

11

## CERTIFICATE OF SERVICE

**I CERTIFY** that on March 18, 2026, I electronically filed this document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Daniel E. Nordby*